# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ONE ON ONE BASKETBALL, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 13-2020 (CKK) |
| GLOBAL PAYMENTS DIRECT, INC., | |
| Defendant. | |

## MEMORANDUM OPINION
(April 23, 2014)

Plaintiff One on One Basketball, Inc. brings this action against Defendant Global Payments Direct, Inc.[1] alleging breach of contract, breach of implied contract, and negligence. Presently before the Court is Defendant's [9] Motion to Transfer and Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted. Upon consideration of the parties' submissions,[2] the applicable authorities, and the entire record, the Court shall GRANT IN PART Defendant's motion. Accordingly, this action is transferred to the United States District Court for the Northern District of Georgia. The Court does not address the portion of Defendant's motion seeking dismissal of Plaintiff's negligence claim, leaving a decision on this

---

[1] The case caption in Plaintiff's Complaint incorrectly identifies Defendant as Global *Payment* Direct, Inc. Subsequent filings in this case from both parties make clear that Defendant is named Global *Payments* Direct, Inc.

[2] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Complaint, ECF No. [1] ("Compl."); Def.'s Mot. to Transfer and Partial Mot. to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted, ECF No. [9] ("Def.'s Mot."); Pl.'s Resp. to Def.'s Mot. to Transfer and Partial Mot. to Dismiss, ECF No. [12] ("Pl.'s Opp'n"); Def.'s Reply Brief in Supp. of its Mot. to Transfer and Partial Mot. to Dismiss, ECF No. [13] ("Def.'s Reply"). In an exercise of its discretion, the Court finds that holding oral argument on the instant motion would not be of assistance in rendering a decision. *See* LCvR 7(f).

issue to the court to which this case is transferred.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff One on One Basketball, Inc. is a District of Columbia corporation that provides basketball training services.  Compl. ¶¶ 1-2.  Although Plaintiff is headquartered in Washington, D.C., it also has eight regional offices throughout the country.  *Id.* ¶ 3.  Each office has its own bank account into which funds are deposited.  *Id.* ¶ 8.  The regional offices provide a percentage of their income to the D.C. headquarters.  *Id.* ¶ 9.  In 2007, each of Plaintiff's offices began accepting credit card transactions and processing these transactions through the D.C. headquarters.  *Id.* ¶¶ 10, 12.

Defendant Global Payments Direct, Inc. is a Georgia corporation which processes electronic transactions, including credit card transactions for merchants, multinational corporations, financial institutions, and consumers to facilitate payment for the purchase of goods and services.  *Id.* ¶ 4.  According to an affidavit submitted by Plaintiff's President, Arthur Jackson, Jackson met Stanley Shields, a representative of Defendant, at a March 2008 conference on Search Engine Optimization.  Pl.'s Opp'n, Ex. 1 (Affidavit of Arthur Jackson) ¶ 3.  According to Jackson, he and Shields discussed a potential credit card payment processing relationship between Plaintiff and Defendant.  *Id.*

In April 2008, Plaintiff and Defendant entered into an agreement under which Defendant agreed to process all of Plaintiff's credit card payments in exchange for a fixed percentage of these payments.  *Id.* ¶ 4.  Jackson's affidavit states that, after several conversations, on April 14, 2008, Shields sent him the Global Payments Merchant Application ("Merchant Application").  *Id.*   Shields also apparently provided Jackson with a related document referenced by the

2

Merchant Application entitled "Card Services Terms & Conditions."[3]  In his affidavit, Jackson states he signed page three of the Merchant Application under the section "Personal Guaranty." *Id.* ¶ 4.  He then returned the Merchant Application along with a copy of the Card Services Terms & Conditions to Shields.  *Id.* The signed section of the Merchant Application provided by Jackson reads, in relevant part: "I/We have read, understand, and agree to be bound by the Card Services Terms & Conditions provided to Merchant and those terms and conditions contained in this Merchant Application."  *Id.*, Ex. A at 3.  Although Jackson acknowledges his signature on this document in his affidavit, in its Complaint, Plaintiff characterizes its relationship with Defendant as an oral contract arising out of conversations between Jackson and Shields under which Defendant agreed to process Plaintiff's credit card transactions in exchange for a fixed percentage of the payments.  Compl. ¶ 13.  Jackson's affidavit also refers to his April 14, 2008 "oral agreement" with Shields.  Pl.'s Opp'n, Ex. 1 ¶ 4.

As relevant here, the Card Services Terms & Conditions mentioned in the Merchant Application contains the following forum-selection clause: "Global, Member, and Merchant agree that all actions arising out, relating to, or in connection with (a) this Card Services Agreement, (b) the relationships which result from this Card Services Agreement, or (c) the validity, scope, interpretation, or enforceability of the choice of law and venue provisions of the Card Services Agreement shall be brought in either the courts of the State of Georgia sitting in Fulton County or the United States District Court for the Northern District of Georgia, and

---

[3] As an exhibit to his affidavit, Jackson attaches the materials he returned by fax to Shields, which include a copy of the Card Services Terms & Conditions.  *Id.*, Ex. A (Jackson Fax Documents).  Therefore, the Court understands that Jackson both received a copy of the Card Services Terms & Conditions and returned these materials to Shields along with a signed copy of the Merchant Application.

3

expressly agree to the exclusive jurisdiction of such courts."[4] Pl.'s Opp'n, Ex. 1, Ex. A at 8. In addition, this document also contains the following language addressing choice of law in disputes arising under the agreement: "Global, Member, and Merchant agree that any and all disputes or controversies of any nature whatsoever (whether in contract, tort, or otherwise) arising out, relating to, or in connection with (a) this Card Services Agreement, (b) the relationships which result from this Card Services Agreement, or (c) the validity, scope, interpretation or enforceability of the choice of law and venue provisions of this Card Services Agreement, shall be governed by the laws of the State of Georgia, notwithstanding any conflicts of laws rules . . . ." *Id.* Finally, the Card Services Terms and Conditions also contains a Merger Clause consisting of the following: "This Card Services Agreement, including these Card Services Terms & Conditions and the Merchant Application, constitutes the entire agreement between Merchant, Global Direct, and Member and supersedes all prior memoranda or agreements relating thereto, whether oral or in writing." *Id.* at 9.

Defendant began processing Plaintiff's credit card payments in May 2008. Compl. ¶ 15. According to Plaintiff, in June 2012, it discovered that its customers' American Express credit card payments were not being deposited into its bank accounts, but rather had been misdirected to another client of Defendant due to a switched account number. *Id.* ¶¶ 18-19. Plaintiff alleges that due to Defendant's misallocation of funds, Plaintiff has been deprived of more than $400,000 of its revenue. *Id.* ¶ 21.

### B. Procedural History

Plaintiff filed suit in this Court on December 19, 2013, asserting three claims: (1) Breach

---

[4] The Card Services Terms & Conditions explains that the "Card Services Agreement" consists of the Card Services Terms & Conditions and the Merchant Application. Pl.'s Opp'n, Ex. 1, Ex. A at 5.

of Contract, (2) Breach of Implied Contract, and (3) Negligence. *Id.* ¶¶ 26-33. On February 12, 2014, Defendant filed the present Motion to Transfer, and Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. Pursuant to 28 U.S.C. § 1404(a) and the forum-selection clause contained in the Card Services Terms & Conditions, Defendant seeks the transfer of this action to the United States District Court for the Northern District of Georgia. Defendant also requests that the Court dismiss Plaintiff's negligence claim pursuant to Rule 12(b)(6). Plaintiff subsequently filed its opposition and Defendant filed its reply. Accordingly, Defendant's motion is now ripe for review.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." A party seeking transfer pursuant to § 1404(a) bears the burden of establishing that transfer is proper. *S. Utah Wilderness Alliance v. Lewis*, 845 F.Supp.2d 231, 234 (D.D.C. 2012). In addition, when evaluating motions to transfer under § 1404(a), a court should only consider undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents. *See Bederson v. United States*, 756 F.Supp.2d 38, 50 n. 6 (D.D.C. 2010) (citing *Midwest Precision Servs. Inc. v. PTM Indus. Corp.*, 574 F.Supp. 657, 659 (N.D. Ill. 1983)); *Cooper v. Farmers New Century Ins. Co.*, 593 F.Supp.2d 14, 18-19 (D.D.C. 2008).

In considering whether transfer would be proper, the court ordinarily considers the following factors:

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease

5

of access to sources of proof.

*Greater Yellowstone Coalition v. Bosworth*, 180 F.Supp.2d 124, 127 (D.D.C. 2001). The Court may also weigh public interest considerations such as (1) the transferee court's familiarity with the governing laws and the pendency of the related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.* at 128.

However, the presence of a valid forum-selection clause substantially changes the analysis under § 1404(a). As the Supreme Court recently clarified, §1404(a) "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S.Ct. 568, 579 (2013). And as the Court stated, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 581. In this context, "the plaintiff's choice of forum merits no weight." *Id.* "[W]hen a plaintiff agrees by contract to bring suit only in a specified forum – presumably in exchange for other binding promises by the defendant – the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* at 582. Furthermore, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests" because "[w]hen the parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Consequently, when a valid forum-selection clause is present, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 581.

## III. DISCUSSION

In seeking a transfer pursuant to §1404(a), Defendant argues that this case should be transferred to the United States District Court for the Northern District of Georgia based on the forum-selection clause contained in the Card Services Terms & Conditions. Plaintiff does not attempt to override this forum-selection clause by pointing to any "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Constr. Co.*, 134 S.Ct. at 581. Rather, Plaintiff argues that the forum-selection clause is inapplicable here, because (1) Jackson's signature on portions of the Merchant Application is a forgery, and (2) the parties are bound by an oral contract, not the written contract represented by the Merchant Application that incorporates the forum-selection clause. Pl.'s Opp'n at 1-2. Both of these arguments are unavailing.

First, Plaintiff's forgery argument is irrelevant to the applicability of the forum-selection clause. Plaintiff claims portions of the version of the Merchant Application provided by Defendant as an exhibit to its motion are fraudulent. *Id. See also* Def.'s Mot, Ex. 1 (Decl. of Kurt Schaeffer), Ex. A (Merchant Application). Specifically, Plaintiff alleges that Jackson's signature on page two of the Merchant Application provided by Defendant is a forgery. In support of this contention, Plaintiff provides a report from a forensic document examiner stating that the signature on page two of Defendant's version does not belong to Jackson. Pl.'s Opp'n, Ex. 2 (Affidavit of Gideon Epstein), Ex. B (Forensic Handwriting Examination Report) at 5. Yet Plaintiff does not contest, and indeed Jackson affirmatively states in his affidavit, that he did sign page three of the Merchant Application, in the section entitled "Personal Guaranty." Pl.'s Opp'n, Ex. 1 ¶ 4. As noted, by signing this portion of the document, Jackson, on behalf of Plaintiff, "agree[d] to be bound by the Card Services Terms & Conditions provided to Merchant and those

7

terms and conditions contained in this Merchant Application." *Id.*, Ex. 1, Ex. A at 3. These Terms and Conditions contain a forum-selection clause requiring that all actions arising out of the agreement "be brought in either the courts of the State of Georgia sitting in Fulton County or the United States District Court for the Northern District of Georgia . . . ." *Id.* at 8. Defendant's alleged forgery of Jackson's signature on other portions of the document is therefore immaterial to the application of the Card Services Terms & Conditions and the forum-selection clause contained therein.

Similarly, the Court is unpersuaded that an oral contract based on the conversations between Jackson and Shields governs the parties' relationship and renders the Merchant Application inapplicable. As noted, when considering motions to transfer under § 1404(a), the Court must rely on undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents. *See Bederson*, 756 F.Supp.2d at 50 n. 6; *Cooper v. Farmers New Century Ins. Co.*, 593 F.Supp.2d at 18-19. Here, the parties agree, and provide supporting evidence to confirm, that Jackson signed page three of the Merchant Application under the section entitled "Personal Guaranty." As discussed, by signing the "Personal Guaranty" portion of the document, Jackson, on behalf of Plaintiff, "agree[d] to be bound by the Card Services Terms & Conditions provided to Merchant and those terms and conditions contained in this Merchant Application." Pl.'s Opp'n, Ex. 1, Ex. A at 3. The Card Services Terms & Conditions include a merger clause stating that the written agreement "supersedes all prior memoranda or agreements relating thereto, whether oral or in writing." *Id.* at 9. Accordingly, the undisputed evidence supports the conclusion that the Merchant Application, and not preceding oral communications, governs here.

Indeed, it bears noting that Plaintiff's naked assertion of an oral contract is a legal

8

conclusion, not an issue of fact. *See Steven R. Perles, P.C. v. Kagy*, 473 F.3d 1244, 1254 (D.C. Cir. 2007) (finding that no oral contract existed "as a matter of law"). Even under the standards of review most deferential to a plaintiff, the Court is not bound to accept legal conclusions in a plaintiff's complaint. *See, e.g., Darby v. U.S. Dept. of Energy*, 231 F.Supp.2d 274, 276-77 (D.D.C. 2002) (stating that under a Rule 12(b)(3) motion, "the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor" but "need not accept the plaintiff's legal conclusions as true."). And here, even in the absence of the merger clause, Plaintiff has failed to establish, as a matter of law, that an oral contract governs its relationship with Defendant. *See New Econ. Capital, LLC v. New Mkts. Capital Group*, 881 A.2d 1087, 1094 (D.C. 2005) (party asserting the existence of an oral contract bears the burden of proving its existence). In order "[t]o create an enforceable oral contract, both parties must intend to be bound by their oral representations alone." *Perles*, 473 F.3d at 1249. Consequently, "[a]n otherwise valid oral agreement does not constitute a contract if 'either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist . . . until the whole has been reduced to . . . written form.'" *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS § 27, cmt. b (1981)).

Here, Jackson states in his affidavit that as part of his oral conversations with Shields, Shields sent him a copy of the Merchant Application and asked him to sign portions of it. Pl.'s Opp'n, Ex. 1 ¶ 4. "The fact that the parties contemplated a written agreement suggests that the parties did not intend to be bound by oral representations alone." *Perles*, 473 F.3d at 1250. *See also Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1240 (D.C. 1995) (finding no oral contract where "[i]t was unquestioned that a written contract was contemplated as part of the

transaction"); *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 547 (D.C. 1981) (parties did not intend to be bound by preliminary oral representations where, *inter alia*, a "written contract embodying the completed contract was contemplated"). The Court's conclusion that no oral contract exists here is further supported by the large amount of money involved. *See Jack Baker, Inc.*, 664 A.2d at 1240 ("whether the amount involved is large or small" is one factor to consider in determining whether the parties entered into an enforceable oral agreement); 1 CORBIN ON CONTRACTS § 2.9 ("The greater the . . . importance of the transaction, the more likely it is that the informal communications are intended to be preliminary only."). In this litigation, Plaintiff is asserting losses in excess of $400,000 under its contract with Defendant and "[i]t strains credulity to suggest" that the parties intended several telephone conversations, in the absence of a written agreement, to give rise to a payment processing relationship involving such large sums of money. *Perles*, 473 F.3d at 1251.[5] Therefore, in light of these considerations, even in the absence of the merger clause, the Court would still not adopt Plaintiff's legal conclusion that an oral contract – and not the Merchant Application – governs its relationship with Defendant.

Accordingly, based on the undisputed evidence contained in the parties' submissions, the Court finds that the forum-selection clause referenced in the Merchant Application governs. Plaintiff makes no effort to show why applying this forum-selection clause here would be inappropriate. Therefore, the Court grants Defendant's request that this action be transferred to the United States District Court for the Northern District of Georgia.

In light of the decision to transfer this case, the Court does not address the portion of

---

[5] "Another factor in determining intent to be bound is the parties' conduct *after* they reach an alleged oral agreement." *Perles*, 473 F.3d at 1249 (emphasis in original). Here, however, this factor sheds little light on the existence or absence of an oral contract, as the parties do not point to post-formation evidence that strongly supports either position and the Court finds none.

Defendant's motion seeking dismissal of Plaintiff's negligence claim. Pursuant to the choice of law provision in the Merchant Application, this issue depends on questions of Georgia law. Pl.'s Opp'n, Ex. 1, Ex. A at 8. Accordingly, it is more appropriately resolved by the Georgia district court than this Court. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981) (noting "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action").

## IV.  CONCLUSION

For the foregoing reasons, Defendant's [9] Motion to Transfer and Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted is GRANTED IN PART.  Specifically, the Court grants Defendant's request that this action be transferred to the United States District Court for the Northern District of Georgia. The Court does not address the portion of Defendant's motion seeking dismissal of Plaintiff's negligence claim, as this issue is more appropriately resolved by the court to which this case is transferred.  An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE

11